UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**DIGITAL FILING SYSTEMS, L.L.C.,**

                      CASE NUMBER: 03-70437

    **Plaintiff**,      HONORABLE VICTORIA A. ROBERTS

    v.

**AKHILESH AGARWAL and**
**ADITYA INTERNATIONAL, jointly and severally**

    **Defendant(s).**
_____/

OPINION AND ORDER GRANTING
PLAINTIFF'S MOTION FOR STATUTORY DAMAGES,
ATTORNEYS' FEES AND AWARD OF INJUNCTIVE RELIEF

**I.   INTRODUCTION**

This matter is before the Court on Plaintiff Digital Filing Systems' Motion for Statutory Damages pursuant to 17 U.S.C. § 504 , Attorneys' Fees pursuant to 17 U.S.C. § 505 and Award of Injunctive Relief pursuant to 17 U.S.C. §§ 502 and 503.  The Court **GRANTS** all of Plaintiff's Motions.

**II.   BACKGROUND**

This is as an action for copyright infringement under the Copyright Act of 1976, 17 U.S.C. §§ 101 *et. seq*.  In 1999, Plaintiff Digital Filing Systems ("Plaintiff") hired Defendant Aditya International to enhance, add, modify and debug a computer software product it had

1

created. Plaintiff alleged that subsequent to this agreement and after obtaining Plaintiff's software product, Defendant sold a computer software product under a different name, which incorporated Plaintiff's software and/or was derived from it. In 3 counts against defendants Aditya International (a corporation) and Akhilesh Agarwal (an individual), Plaintiff alleged: (1) copyright infringement; (2) conversion; and, (3) breach of contract. On April 22, 2005 the Court granted Plaintiff's Motion for Default Judgment based on its findings that the Defendants had failed to prosecute the matter and had actively and unreasonably delayed proceedings.

### III.   APPLICABLE LAW AND ANALYSIS

#### A.   STATUTORY DAMAGES

A prevailing party in an action for copyright infringement may elect statutory damages pursuant to § 504 of the Copyright Act. 17 U.S.C. § 504(a). Under § 504(c)(1),

> Except as provided by clause (2) of this subsection, the copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally, in a sum of not less than $750 or more than $30,000 as the court considers just. For the purposes of this subsection, all the parts of a compilation or derivative work constitute one work.

The Court first addresses whether Plaintiff can properly bring a motion for statutory damages under §504(c)(1). In its Motion for Default Judgment, Plaintiff expressly reserved the right to bring a motion for damages for the overall lawsuit within 30 days of judgment. Plaintiff did not elect between remedies prior to judgment on the motion. To determine whether Plaintiff can elect statutory damages subsequent to entry of judgment on the motion for default judgment this Court relies on reasoning from the Sixth Circuit Court of Appeals. In addressing this issue, the

Sixth Circuit discussed and distinguished two Second Circuit cases: *Oboler v. Goldin*, 714 F.2d 211 (2d Cir. 1983) and *Twin Peaks Prod. v. Publications Int'l*, 996 F.2d 1366 (2d Cir. 1993). *Twin Peaks* involved plaintiffs who unsuccessfully tried to "un-elect" statutory damages and return to actual damages on appeal. That court held that "once a plaintiff has elected statutory damages, it has given up the right to seek actual damages and may not renew that right on appeal by cross-appealing to seek an increase in the actual damages." *Cotter v. Christus Gardens,* 238 F.3d 420 (6th Cir. 2000) *(citing, Twin Peaks*, 996 F.2d at 1383). In *Oboler*, the court held that after a final verdict awarding actual damages is reopened, the plaintiff may elect statutory damages on remand. In its analysis, the Sixth Circuit Court stated:

> Moreover, the Second Circuit did not distinguish *Oboler* as a rule that only applied to cases where the plaintiff was foreclosed from making an election below when it distinguished *Oboler* in *Twin Peaks*. See *Twin Peaks*, 996 F.2d at 1380. Instead, *Twin Peaks* merely found that the *Oboler* plaintiff "had not elected between remedies prior to judgment" while the plaintiff in *Twin Peaks* had made such an election below and sought actual damages on appeal. *Id.* Accordingly, Cotter may elect statutory damages.

Here, the Court ruled on the Motion for Default Judgment, but did not rule on damages. Furthermore, Plaintiff did not elect between remedies prior to entry of judgment. Applying the logic of the Sixth Circuit Court of Appeals in *Cotter*, Plaintiff can request statutory damages.

The Court next addresses the blameworthiness of the Defendants. "Where the copyright owner establishes willful infringement, the Court may increase the award of statutory damages to a sum of not more than $150,000. On the other hand, where the infringers establish that they were not aware and had no reason to believe that their acts constituted copyright infringement, i.e. innocent infringement, the Court, in its discretion, may reduce the award of statutory damages to a sum of not less than $200. *Jobete Music Co., Inc. v. Johnson Communications,*

*Inc.*, 285 F.Supp.2d 1077 (2003).  In the context of copyright law, the terms "willful" and "innocent" have specialized meanings.  Willfulness is not defined in either the Copyright Act or its legislative history.  However, the Sixth Circuit has explained:

> It seems clear that as here used, 'willfully' means with knowledge that the defendant's conduct constitutes copyright infringement.  Otherwise, there would be no point in providing specially for the reduction of minimum awards in the case of innocent infringement, because any infringement that was nonwillful would necessarily be innocent.  This seems to mean, then, that one who has been notified that his conduct constitutes copyright infringement, but who reasonably and in good faith believes the contrary, is not 'willful' for these purposes. *Princeton University Press v. Michigan Document Services*, 99 F.3d 1381 (1996).  (*Citing*, Melville B. Nimmer & David Nimmer, 3 *Nimmer on Copyright* § 14.04 [B] [3] (1996))

. The Second Circuit has further elaborated that "'willfully' infringing and 'innocent intent' are not the converse of one another.  Thus, it is possible in the same action for a plaintiff not to be able to prove a defendant's willfulness, and, at the same time, for the defendant to be unable to show that it acted innocently." *Fitzgerald Publishing Co. v. Baylor Publishing Co.*, 807 F.2d 1110, 1115 (2d Cir. 1986).

The Court finds that Plaintiff has not adequately proven that Defendants acted willfully for purposes of this statute.  "Plaintiff must establish that the defendant had either 'actual or constructive knowledge' of its infringing conduct." *Hi-Tech Video Productions v. Capital Cities/ABC Inc.*, 804 F.Supp. 950 (1992).  "To prove constructive knowledge, courts have generally required the copyright owner to show that the "infringer has acted in reckless disregard of the copyright owner's right." *Id*.

In support of their position that Defendants "knowingly and willfully infringed" their registered copyright, Plaintiff asserts that Defendants had continuous communication with Plaintiff as Defendants developed the software based on a program provided to them by Plaintiff,

4

under contract with Plaintiff and with a duty to assign the work to Plaintiff; and, on numerous occasions, Defendants obtained the sale by undercutting the price they knew was being offered at the time by Plaintiff.  The evidence presented by Plaintiffs establishes that Defendants did not act *innocently*, but it does not sufficiently establish that Defendants acted *willfully*.

Default Judgment was entered against Defendants and in favor of Plaintiffs on the issue of copyright infringement.  Therefore, as a matter of law, Defendants are liable for damages for copyright infringement.  However, Defendants continue to maintain that they have a valid copyright registration number on record for the software they are marketing and they vehemently deny that the software in question was developed by Plaintiff.  This was not a case of 'reckless disregard" of Plaintiff's rights by Defendants, as they truly believed they were legitimately marketing and selling their product.  Defendants are not "counterfeiters or chronic copyrighters," which are typical instances in which a court would grant heightened damages.  *Schiffer Publishing, Ltd. v. Chronicle Books, L.L.C*, 2005 WL 67077.

Plaintiff's evidence falls short of the required proof necessary to meet the strict test of "willfullness" necessary for the court to grant an award of $150,000 in statutory damages. Accordingly, the Court has discretion to award statutory damages "in a sum of not less than $750 or more than $30,000 as the court considers just" for each infringement.  17 U.S.C. § 504(C)(1). The Supreme Court has stated that one of the principles underlying the Copyright Act is the deterrence and discouragement of wrongful conduct:

> A rule of liability which merely takes away the profits from an infringement would offer little discouragement to infringers.  It would fall short of an effective sanction for enforcement of the copyright policy.  The statutory rule, formulated after long experience, not merely compels restitution of profit and reparation for injury but also is designed to discourage wrongful conduct.  The discretion of the court is wide enough to permit a resort to statutory damages for such purposes.  Even for uninjurious and

unprofitable invasions of copyright the court may, if it deems just, impose a liability within statutory limits sanction and vindicate the statutory policy. *Coleman v. Payne*, 698 F.Supp.704 (1988), *citing, F.W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228 (1952).

Plaintiff has identified 90 copies of the infringing software product in 30 identified locations within the United States. The court will multiply each of the works by the statutory minimum of $750 and award Plaintiff $67,500.

Statutory Damages in the amount of $67,500 will be GRANTED to Plaintiffs.

### B.     ATTORNEYS' FEES

Howard & Howard Attorneys, P.C. (Howard) is a Bloomfield Hills, Michigan law firm. Plaintiff brings his Motion for Attorneys' Fees under 17 U.S.C. § 505, which states:

> In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs.

A reasonable rate is the prevailing rate, in the relevant market, for "similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stevenson*, 465 U.S. 886, 895 (1984); *Tri-Star*, 42 F.Supp. 2d at 302, *Intel Corp. v. Terabyte International, Inc.*, 9 F.3d 614, 622 (9th Cir. 1993); *Northcross*, 611 F.2d at 638. Several courts have held that the relevant market is the judicial district in which the court presides. *Tri-Star*, 42 F.Supp. 2d at 302; *Luciano v. Olsten*, 109 F.3d 111, 115-116 (2nd Cir. 1997).

"[T]he burden is on the fee applicant to produce satisfactory evidence – in addition to the attorney's own affidavits – that the requested rates are in line with those prevailing in the community for similar services…." *Blum*, 465 U.S. 896 at n.11; *Intel Corp.*, 6 F.3d at 622. The

Court in *Blum* acknowledged the difficulty in determining the prevailing market rate. Id. However, the Court suggested that the "rates charged in private representations may afford relevant comparisons." Id; See also *In re Olson*, 884 F.2d at 1423-1424 (applicant submitted affidavit of competent local counsel's fee schedule).

In support of their requested hourly rates, Plaintiff relies on the results of a survey developed and conducted by the Law Practice Management Committee of the American Intellectual Property Law Association (AIPLA). The survey reports the annual incomes and related professional and demographic characteristics of intellectual property (IP) law attorneys and associated patent agents. However, the AIPLA survey is compiled of attorneys nationwide and even included responses from a handful of international attorneys. The Court does not find this to be satisfactory evidence that Plaintiff's rates are "in line with those prevailing in the community for similar services." *Blum*, 465 U.S. 896 at n.11.

The Defendant, Akhilesh Agarwal, does not provide an alternative source for calculating a reasonable rate. Rather, Defendant makes a general objection claiming that the requested amount is "highly excessive and arbitrary in nature." *Defendant's Response*, p.6. The Court finds that the attorneys' fees must be reduced to local market rates. Plaintiff did not provide any evidence regarding the rates charged for similar services by comparable lawyers in this locale.

The Michigan State Bar's 2000 economic survey indicates the average hourly billing rates of Michigan attorneys broken down into four categories: (1) office location; (2) firm size; (3) years in practice; and, (4) category. Howard is located in South Oakland County and

employs roughly 80 attorneys.[1]  The survey indicates that the average hourly rate for attorneys practicing in South Oakland County averaged $158.00, attorneys in a Michigan firm with 51 to 100 attorneys averaged $125.00 hourly and Michigan attorneys specializing in Intellectual Property averaged $190.00 hourly.  Hourly rates varied with number of years in practice.  Michigan attorneys in practice less than 5 years averaged an hourly rate of $125.00 while those in practice between 5 and 9 years averaged $135.00 per hour.  Finally, a Michigan attorney with 20 to 29 years of practice had an average hourly rate of $150.00.

Plaintiff is requesting $35,038.50 in attorney fees.  Five attorneys submitted invoices billing for hours worked on this case: Melinda Buurma, Matt Woodworth, Toni Harris, Jeff Sadowski and John Seurynck.  Buurma, Woodworth and Harris each have roughly 3 years of experience while Seurynck has five and Sadowski has approximately twenty-eight.  The hourly rates charged by Buurma ($155.00-$175.00), Woodworth ($135.00) Harris ($150.00) and Seurynck ($185.00-$195.00) are reasonable in light of their experience and based on the results of the survey.

However, the court finds that Sadowski's rates of $360.00, $365.00 and $375.00 are not reasonable.  The survey indicates that only 5% of attorneys with 20 to 29 years of experience practicing in the State of Michigan charge an hourly rate in excess of $255.00.  Only 5% of all attorneys practicing in South Oakland County charge an hourly rate greater than $250.00.  Only 5% of attorneys practicing intellectual property in the State of Michigan charge a rate in excess of $300.00.  And, only 5% of attorneys in a firm comparable in size to Howard charge an hourly

---

[1] The firm of Howard & Howard Attorneys, P.C. has three Michigan offices and one office in Illinois.  According to a printout from the firm's website, it has a total of 66 attorneys in the Michigan offices and an additional 12 attorneys in the Illinois office.

rate greater than $300.00. The hourly rate charged by Sadowski far exceeds even the most generous interpretation of "the prevailing rate, in the relevant market, for "similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum* 465 U.S. 896 at n.11.

Given Sadowski's 28 years of work experience, an hourly fee in the 75th percentile range of the "years in practice" category would be reasonable. That amount would be $197.00. However, the survey indicates that between 1994 and 1997 there was no change in the hourly median billing rate, but the rate increased 20% from $125.00 to $150.00 in 2000. Based on that increase, but without a standard increase per year to rely on, the Court allows for a 10% increase during the past 5 years, since the survey was conducted in 2000. Therefore, the court awards Sadowski $217.00 per hour. His invoices demonstrate that he worked 47.15 hours.

In total, the Court awards Plaintiff attorneys' fees in the amount of $27,720.55 plus an additional $150.00 filing fee for a total of $27,870.55:

| | |
|---|---|
| Fee Requested | $34,933.50 |
| Filing Cost | + $150.00 |
| Reduction for Sadowski | ($7212.95)[2] |
| | $27,870.55 |

### C. PLAINTIFF'S MOTION FOR INJUNCTIVE RELIEF

The Copyright Statute in 17 U.S.C. §§ 502 and 503 provides for the impoundment and disposition of infringing articles. Section 502 reads:

> (a) Any court having jurisdiction of a civil action arising under this title may, subject to the provisions of section 1498 of title 28, grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright.

---

[2] **$17,444.50** (Sadowski's requested fees) - **$10,231.55** (47.15 hrs. x $217) = **$7,212.95**; Sadowski's requested fees: [(9.45 hrs. x $360 = $3,402); (9.5 hrs. x $365 = $3,467.50); (28.2 hrs. x $375 = $10, 575)].

> (b) Any such injunction may be served anywhere in the United States on the person enjoined; it shall be operative throughout the United States and shall be enforceable, by proceedings in contempt or otherwise, by any United States court having jurisdiction of that person. The clerk of the court granting the injunction shall, when requested by any other court in which enforcement of the injunction is sought, transmit promptly to the other court a certified copy of all the papers in the case on file in such clerk's office.

Judgment will enter in favor of Plaintiff pursuant to 17 U.S.C. § 502. The Court will issue an injunction restraining Defendants from offering for sale, selling, reproducing, preparing derivative works, distributing copies of, or otherwise using the software product DIGIFILE, DIGICOURT, PROFILE or any similar work of either Plaintiff or Defendant, and refrain from asserting any contract other than the 1999 Agreement as a valid contract between the parties.

Judgment will enter in favor of Plaintiff pursuant to 17 U.S.C. § 503(b), which reads:

> (b) As part of a final judgment or decree, the court may order the destruction or other reasonable disposition of all copies or phonorecords found to have been made or used in violation of the copyright owner's exclusive rights, and of all plates, molds, matrices, masters, tapes, film negatives, or other articles by means of which such copies or phonorecords may be reproduced.

The Court orders that all copies of any software identified as DIGIFILE, DIGICOURT, or similar software obtained from Defendants or a reseller or distributor of Defendants shall be impounded by Plaintiff and destroyed at Plaintiff's discretion, whether in tangible media of expression or disposed of electronically.

The Court will further order that Copyright Registration No. TX 5-389-304 issued to Defendant Agarwal shall be stricken from the Copyright Office Register as invalid and wrongfully obtained, and that notice be issued to the Copyright Office that Plaintiff's Registration is valid and that Defendants' Registration is invalid.

**IV.   CONCLUSION**

The Court **GRANTS** Plaintiff's Motion for Statutory Damages in the amount of $67,500.00, **GRANTS** Plaintiff's Motion for Attorney Fees and Costs (with a reduction) and **GRANTS** Plaintiff's Motion for Injunctive Relief.

   **IT IS SO ORDERED.**


                                          s/Victoria A. Roberts
                                          Victoria A. Roberts
                                          United States District Judge

Dated:  July 20, 2005

---
The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on July 20, 2005.

s/Linda Vertriest
Deputy Clerk

---